(109 So. 778)

No. 28030.

## STATE v. HAYES.

(June 28, 1926. Rehearing Denied Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law** ⚖154—**In prosecution, 27 years after alleged offense, evidence held to show that officer had knowledge of alleged offense more than year previous to filing of information.**

In prosecution for assault by willfully shooting at, brought 27 years after alleged offense, evidence *held* to show that officer, authorized to institute prosecution, knew of alleged offense more than a year previous to filing of information, as affecting plea of prescription.

2. **Criminal law** ⚖154—**As to plea of prescription, officer with knowledge of offense need not be shown to have known details, or that facts involved criminal liability.**

Under plea of prescription, on ground that officer, authorized to institute prosecution, knew of alleged assault more than year previous to filing of information, it is not necessary to show that officer knew details, or that facts involved criminal liability and would sustain charge.

3. **Criminal law** ⚖288—**Exclusion of evidence that defendant was not fugitive from justice, offered in support in plea of prescription and in denial of allegation in information, held error.**

In prosecution for assault committed 27 years previously, where information alleged that commission of offense was not brought to knowledge of any officer empowered to institute prosecution until within a year preceding filing of information, and further that defendant had fled from justice and had been continuously a fugitive until 4 months before information was filed, it was error to exclude evidence that defendant had not been fugitive from justice, notwithstanding it had decided that there was no evidence that offense was known to an officer authorized to institute prosecution.

4. **Criminal law** ⚖152.

Where defendant has absconded and remained a fugitive from justice, prosecution will not be barred, even though offense was known to officer authorized to institute prosecution for more than year before information was filed.

5. **Jury** ⚖32(2).

Prosecution for assault by willfully shooting at, alleged to have been committed in 1898, *held* improperly tried to a jury of 5, instead of 12, under Const. 1898 and Rev. St. 1870, § 792, as amended by Act No. 59 of 1896, notwithstanding Act No. 9 of 1912.

Appeal from Eighteenth Judicial District Court, Parish of Pointe Coupee; Wm. C. Carruth, Judge.

Frank Hayes was convicted of assault by shooting at, and he appeals. Verdict and sentence set aside, and case remanded.

Dupont & Dupont, of Plaquemine, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., J. H. Morrison, Dist. Atty., of New Roads (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

THOMPSON, J. The defendant appeals from a conviction and sentence to the penitentiary for the crime of assault by willfully shooting at. The information was filed on October 19, 1925, and charges that the offense was committed on or about August 15, 1898.

In order to justify the prosecution, and to show that the offense had not prescribed, the information alleged that the commission of the offense was not brought to the knowledge of any officer of the state authorized and empowered to institute or direct prosecution until within the year immediately preceding the filing of the information, and further that, immediately upon committing the said offense, the said Hayes fled from justice, and was continuously a fugitive from justice until arrested some four months before the information was filed.

Before going to trial the defendant filed a motion to quash the information on the ground that the prosecution was barred by the prescription of one year. In this motion it is alleged that the offense charged against defendant had been made known to a public officer having the power to direct a public

prosecution on or about the time the said offense is alleged to have been committed, and that defendant had never absconded or fled from justice.

The motion was tried, and after hearing evidence the court overruled the same, for the reason that in the opinion of the court the evidence did not show that the commission of the offense had been brought to the knowledge of an officer having the authority to direct a prosecution.

The counsel for defendant then offered to prove that the defendant had not been a fugitive from justice as alleged in the information, but the request was denied by the court.

The action of the court in overruling the motion and plea, and denying the defendant the right to prove that he had not been a fugitive from justice, is made the subject of the first bill of exception.

The judge in his per curiam states that no evidence was offered by the defendant to the effect that at any time prior to the filing of the information any public officer had any knowledge of the alleged crime or offense.

[1] We are constrained to differ with our learned brother when he says that no evidence at all was introduced showing that the offense was known to an officer.

The evidence taken on the trial of the motion is attached to and forms a part of the bill of exception.

This evidence shows that the defendant placed the witness E. C. Lorio on the stand, and asked him on three different occasions whether or not he knew that Mr. Beuker, who was sheriff at the time the offense is alleged to have been committed, knew of the shooting between Hayes and Phillips; Hayes being the defendant and Phillips the party shot at. Each time the question was propounded, the state objected on the ground that the question was leading and suggestive, and each time the objection was sustained by the court.

The witness was finally permitted to say that, a few days after this trouble, he went to Mr. Beuker's residence and asked him, in conversing with him, "if he had got Mr. Munford's 'nigger' yet, and his answer to me was that he had not been looking for him, because no charge had been made against him."

The following question was then asked Mr. Lorio:

"Can you state, from your own knowledge, whether or not any public official, or officer having the power to direct a public prosecution, had knowledge of the alleged offense—had knowledge of Frank Hayes having shot at Munford Phillips on or about August 15, 1898?"

To which the witness answered:

"Mr. Beuker at the time was a public official; he was the sheriff of the parish. I remember my conversing with him. I asked him if they had got that nigger, meaning this Hayes. His answer to me was that he was not looking for him at that time."

On cross-examination by the district attorney, the witness stated that the conversation with the sheriff was a few days after the alleged shooting, that they never went into the details of the shooting, and that the sheriff stated that the reason he was not looking for Frank Hayes was that no charge had been made against him.

There is no evidence to contradict this witness, and his testimony is in no manner discredited.

Beuker was sheriff at the time, and lived within a mile of the place where the shooting occurred.

Lorio was a near neighbor of the sheriff, frequently visited his residence, and they were on intimate terms of friendship.

From the conversation, as related by Lorio, we have no doubt that the then sheriff was informed of the fact of the alleged shooting.

If he had not been so informed, it seems to us that he would have told Lorio so, instead of saying that he had not arrested Hayes, and had not been looking for him, because

no charge had been made against him. No other conclusion can be drawn from the question to the sheriff, and his answer thereto, than that the sheriff did have knowledge of the shooting.

[2] This was all that was necessary. It was not required to show that the officer knew of the details of the shooting, or that the facts involved criminal liability, and would sustain a charge against the party who was supposed to have committed the unlawful act.

It is true that Phillips, the person alleged to have been shot at, states that he had never, during the period of 27 years, informed any officer of the fact of shooting, although he lived within a short distance of the residence of the sheriff, and was frequently at the courthouse, having been a member of the school board, and at one time president of that body. His testimony, however, is of a negative character, and does not contradict that of the witness Lorio.

Our conclusion is that the plea of prescription was well founded, and should have been sustained, in so far as the plea was based on the fact that the offense had been made known to an officer authorized to direct or institute a criminal prosecution more than a year previous to the filing of the information.

In State v. Stelly, 126 La. 659, 52 So. 864, it was held that:

. "Under Rev. St. 3541, requiring a sheriff to preserve the peace and apprehend public offenders, his deputy, as his alter ego, is an officer 'having the power to direct a public prosecution,' as affecting the bar of prosecution."

The conclusion reached on the part of the plea under discussion would require the dismissal of the prosecution and the discharge of the defendant, but for the other allegation in the information to the effect that the defendant had been a fugitive from justice continuously from the date of the offense up to within the year prior to the filing of the charge.

[3] We are not in a position to pass on this part of the plea. The defendant offered to rebut the allegation, and to show that he had not been a fugitive from justice, but the court would not hear the evidence. In thus ruling the court committed an error. The trial judge assumed, and correctly so from his view of the evidence, that, if the offense had not been brought to the knowledge of an officer more than a year before the prosecution was instituted, it was immaterial whether defendant had fled from justice or not.

But the court in so ruling failed to take into consideration the fact that the matter was subject to review on appeal, and that, if the ruling on the motion should be reversed, the question of whether defendant was a fugitive from justice or not would become important and material, both to the defendant and to the state.

If the defendant can sustain his plea, and prove that he was not a fugitive from justice, or if it does not otherwise appear that he was a fugitive from justice, then the prosecution must fall under the bar of the statute for both reasons; that is, that the crime had been made known to a proper officer, and that the defendant had not absconded.

[4] On the other hand, if it is shown that the defendant absconded and remained a fugitive from justice, then the prosecution will not be barred, even though, as we have held, the offense was made known to the proper officer more than a year before the information was filed.

There is no prescription which would bar a prosecution for an offense against the state, where the alleged offender has fled from justice immediately after committing the offense, and remains a fugitive until apprehended and properly charged.

And this is true, whether the offense had been made known to an officer or not.

The ruling of the court was accepted as final, and the question as to whether the defendant had been a fugitive from justice was not submitted to the jury, either by the state or the defendant.

While the case will have to be remanded for the reasons stated, still there is another bill of exception which requires consideration, and which was reserved to the overruling of a motion in arrest of judgment.

[5] This motion is directed at the power and jurisdiction of the court to try the defendant by a jury of 5, instead of by a jury of 12.

At the time the offense is charged to have been committed (August 15, 1898), the crime of assault by willfully shooting at was an absolute felony, punishable by imprisonment at hard labor in the penitentiary, and not otherwise. Section 792, R. S., as amended by Act 59 of 1896.

Under the Constitution of 1898, which was in force at the time of the alleged offense, all absolute felonies were triable by a jury of 12.

The Legislature, by Act 9 of 1912, amended section 792 of Revised Statutes, as amended by Act 59 of 1896, and made the offense of assault by willfully shooting at punishable by imprisonment *with* or *without* hard labor for not more than twenty years.

The act, however, was prospective in its operations, and only related to such offenses as thereafter committed. It had no application to an offense committed prior to its enactment.

On the contrary, the act specially reserved to the state the right to prosecute for all offenses of the character dealt with by the statute, which had been committed prior to the passage of said act.

The act even went further than the mere reservation of the right of the state to prosecute for past offenses, and provided:

"That this act shall not apply to offenses committed prior to the adoption hereof, but all such offenses shall be prosecuted and punished as is now provided by existing laws."

The power of the Legislature to enact the provision just quoted is not questioned. While it was not in the power of the Legislature to say that all offenses of assault by willfully shooting at, committed after the passage of Act 9 of 1912, could be tried in any other manner and by any other tribunal than such as provided in the Constitution, still it was competent for the lawmakers to declare that, for all such offenses committed prior to the act, the party committing such offense should be tried, prosecuted, and punished as provided by the laws in force at the time such offense was committed.

The conclusion therefore is inevitable that the defendant was tried by an incompetent tribunal. The court was without power to sentence the defendant otherwise than as provided by Act 59 of 1896; that is to say, by imprisonment in the penitentiary.

From which it follows that the defendant could not be tried otherwise than as provided for the trial of offenses punishable by imprisonment at hard labor—which means imprisonment in the penitentiary—by a jury of 12, and not by a jury of 5.

For the reasons assigned, the verdict and sentence are set aside, and the case is remanded, to be proceeded with in accordance with the views herein expressed and as the law directs.

O'NIELL, C. J., is of the opinion that the plea of prescription should be sustained, but otherwise concurs herein.