ODOM, Justice.
 

 Defendants were indicted and tried in the Parish of Winn for the crime of cow-stealing. They were convicted and sentenced to hard labor. From the conviction and sentence they prosecute this appeal.
 

 There is but one bill of exception found in the record. That bill was reserved to the ruling of the trial judge overruling a motion to quash on the ground that the crime was prescribed.
 

 
 *1064
 
 The indictment was 'returned in the Parish of Winn- on September 1-1, 1939, and alleged that the crime was committed on July 18, 1938, more than .12 months prior to the filing of the indictment. The indictment, however, negatived prescription by setting out “That the statutory prescription of one year has not run against said offense for the reason that the same was not made known to the Judge, District Attorney or Grand Jury, or to any other officer or officers of the law having power and authority to institute a public prosecution thereof until on or about April 14, 1939, less than one year prior to the date of this presentment”. Article 8, Code of Criminal Procedure, as amended and reenacted by Act 21, Second Extra Session of 1935.
 

 Defendants alleged in their motion to quash that the commission of the crime was made known to Judge Cas Moss and Harry Fuller, district attorney of the Eighth Judicial District Court, and to G. M. Walsworth, a deputy sheriff of the Parish of Winn, during the month of July, 1938, about one year and, two months prior to the date on which the indictment was filed. Testimony was adduced by defendants in support of their allegations that the crime had prescribed.
 

 The facts disclosed by the record are these: In the month of July, 1938, a man who was hauling fence posts from the woods in the Parish of Jackson, near the line between that parish and the Parish of Winn, discovered what he considered to be evidence that an animal had been slaughtered. He notified his neighbors and the sheriff of Jackson Parish. A search was made, and the head and hide of a cow were discovered near by — all within the Parish of Jackson. Soon thereafter, these defendants were arrested by the sheriff of Ouachita Parish and delivered to the sheriff of Jackson Parish, who held them for the crime of cow-stealing committed in the Parish of Jackson. They applied for, and were granted, bail.
 

 The defendants lived in the Parish of Winn and offered as sureties on their bonds certain persons who resided in the Parish of Winn. The Parish of Jackson is in the Second Judicial District and is adjacent to the Parish of Winn, which is in the Eighth District. The bonds were written out by the proper authorities in the Parish of Jackson and were carried by the father of one of the defendants to Judge Cas Moss, one of the judges of the Eighth Judicial District (composed of the parishes of Caldwell, Winn, LaSalle, and Grant), in order that the bonds might be approved, in compliance with Revised Statutes, Sections 1011 and 1012. Judge Moss approved the bonds on July 30, 1938, which was more than a year prior to the date on which the indictment was found in the Parish of Winn.
 

 The theory advanced by counsel for defendants is that the crime, if any was committed, was made known to Judge Moss at the time he approved the bonds, on July 30, 1938, and that prescription began to run on that date.
 

 We find no merit in the contention. Defendants were first indicted for this crime in the Parish of Jackson on Septem
 
 *1066
 
 her 15, 1938, and were called up for trial in that parish in the month of April, 1939, at which time they filed a plea to the jurisdiction of that court, claiming that the crime for which they were being prosecuted, if committed at all, was committed in the Parish of Winn and not in the Parish of Jackson. In support of their plea to the jurisdiction, they supplied evidence showing that the cow was roped in the Parish of Winn, led across the parish line into Jackson Parish, and there slaughtered. Apparently their defense was that they had obtained lawful possession of the cow in the Parish of Winn. They themselves furnished the .first and only information that any of the officers had that the cow was stolen in the Parish of Winn and not in the Parish of Jackson.
 

 Their plea to the jurisdiction was sustained by the judge of the Second Judicial District Court for the Parish of Jackson, and the defendants were discharged. They were subsequently-turned over to the sheriff of the Parish of Winn and we,re there indicted for this crime in the month of September, 1939.
 

 This case was tried before Judge Jones, the other judge of the Eighth Judicial District, and Judge Moss was called as a witness in connection with the plea that the commission of the crime was made known to him on July 30, 1938, when he approved the bonds. He stated that, at the time he approved the bonds, he had knowledge that these defendants were accused of cow-stealing, because the bonds themselves showed that.' He stated further that the documents .presented to him showed .that the crime was committed in the Parish of Jackson, which was not a part of the Eighth. Judicial District, over which, he presided as judge. Judge Moss said, “I. did not have knowledge that the crime was committed within the Parish of Winn until several months after the date of the approval of the Bond clearly within the twelve months prior to the date of the indictment returned by the Grand Jury” (meaning the indictment returned in the Parish of Winn). He testified that the first and only knowledge that he had of the charge was when application was made to him to approve the bonds, which were to be furnished by parties residing in'Winn Parish, for an offense charged to have been committed in Jackson Parish. He said, “Of course I didn’t go into a discussion with the parties as to the details of the facts. Mr. Young and some parties mentioned the matter to me in connection with the matter of approving the bond, and I was under the impression at that time and continued under that impression that the offense was committed in Jackson Parish - until that Court declined jurisdiction and then it was that the fact became norated around that the offense was committed in Winn Parish.”
 

 Article 8' of the Code of Criminal Procedure, as amended, provides that no person shall be prosecuted, tried, or punished for any offense (murder, arson, rapej robbery, forgery, and counterfeiting excepted) unless the indictment “be filed within one year after the- offense shall have been made known to the judge, district attorney or Grand Jury having jurisdiction”. ■
 

 
 *1068
 
 Under the circumstances disclosed by the record, it cannot be said that this crime was made known to Judge Moss at the time he approved the bonds. Within the meaning of the Code, a crime or offense is made known to an officer “having jurisdiction” when the facts which come to his knowledge are such as to indicate to him that it is his official duty to act or to see that an investigation of the alleged crime is instituted within his jurisdiction. Judge Moss knew when he ápproved the bonds that these defendants were accused of cow-stealing. But the knowledge brought to him was riot such as to suggest that it was his official duty to act. Quite the. contrary. He had before him official documents showing that the crime was committed in the Parish of Jackson, which was not within his judicial district — that is, that the. crime was committed beyond his territorial jurisdiction. He was not told that the crime was committed in Winn Parish. According to the facts disclosed to him, neither he nor any other officer within his territorial jurisdiction had power or authority to act. If the facts disclosed to him were true, he could not-order an arrest, nor could he set in motion the machinery for an investigation. It was not his duty to act. Such knowledge as he had did not in law serve as a starting point for the running of the prescriptive period.
 

 Counsel for defendants tried to prove that Fuller, district attorney for the Eighth District, had knowledge that the cow was stolen in Winn Parish'more than one yeár prior to the date on which the indictment was filed in Winn Parish. But they failed in their attempt.
 

 Counsel for defendants cite the recent case of State v. Cooley et al., 176 La. 448, 146 So. 19, 22, in which this court said that the prescription mentioned in Article 8 of the Code of Criminal Procedure begins to run from the date knowledge of the crime is made known to the judge, the district attorney, or the grand jury having jurisdiction, and said further, “it is not affected by the nonaction of the official or official body authorized to prosecute, no matter what the official’s reason may be for his or their nonaction”.'
 

 In commenting, counsel say in their brief that “it makes no difference what Judge Moss’ reason was for his nonaction in the case at bar when the offense was made known to him. He simply thought his court did not have jurisdiction, just, it is submitted, as the district attorney thought in the above Cooley, case that he did not have sufficient information to warrant a prosecution”.
 

 What the court said in State v. Cooley, supra, has no application whatever to a case like the one presently before us. In the Cooley case the question of jurisdiction was not involved. In that case, the district attorney failed to act because, in his opinion, the information which he had was not sufficient to support a conviction. What the court held was that the information which he had was sufficient to warrant further investigation, and that therefore prescription begari to run from the time the reports of the commission of the crime were first
 
 *1070
 
 brought to his knowledge. In the case at bar, the information which was brought to Judge Moss was such as to indicate clearly to him that it was not his duty to act, and, in fact, to indicate that he had no power to act.
 

 The case of State v. Touchet, 46 La.Ann. 827, 15 So. 390, supports the ruling of the trial judge in this case. In the Touchet case, one Conners was charged before a justice of the peace with the crime of larceny. He was tried twice before the district court and finally discharged. At the second trial there was some testimony given by the daughter of Conners, indicating that Touchet, and not Conners, was the guilty party, and some testimony to that effect was introduced at the preliminary examination before the magistrate. But neither the magistrate nor the district attorney gave serious consideration to such testimony. The district attorney testified that he believed when Conners was tried that he •was the guilty party and that the testimony fully warranted that belief. Touchet was subsequently indicted for the crime, and, when brought to trial, pleaded prescription. This court in overruling the plea, said:
 

 “We do not think that, under the circumstances stated, it could be held that the justice had such knowledge of Touchet’s having committed the crime as would in law serve as the starting point for prescription. The knowledge conveyed to an officer, to have that result, must be such as would have warranted him, acting in the exercise of sound judicial-discretion, in ordering an arrest. *- * * -We think, under the facts of this special case, that prescription only began to run when the district, attorney became advised of the real situation.”
 

 It is certain that Judge Moss'was not advised of the real situation when he approved the bonds in this. case..
 

 In the case of State v. Perkins, 181 La. 997, 160 So. 789, 791, the court cited and reviewed the Touchet and Cooley cases and discussed at length the meaning of the word “knowledge” as used in Article 8 of the Code, and said: “In this sense, knowledge is such actual notice as would put one upon inquiry. See Corpus "Juris, vol. 35, p. 919.”
 

 For the reasons assigned, we find no error in the ruling of the district court, and the conviction and sentence are affirmed.