199 So. 793

**STATE v. OLIVER et al.**

No. 35564.

Dec. 2, 1940.

Dissenting Opinion Dec. 14, 1940.

Rehearing Denied Jan. 6, 1941.

Atlee P. Steckler and Geo. L. Fontenot, both of Ville Platte, for defendants, appellants.

Eugene Stanley and Niels F. Hertz, both of New Orleans, and E. Herman Guillory, of·Ville Platte, for the State, appellee.

HIGGINS, Justice.

After the defendant, J. David Oliver, had been convicted of the crime of embezzlement of public funds belonging to the Parish of Evangeline, in his motion for a new trial he pleaded that the offense was prescribed, but the trial judge overruled the plea on the ground that it came too late and refused to consider it, and imposed the sentence. On appeal to this Court, we held that the accused had the right "to tender a plea of prescription for the first time after conviction but before sentence in a motion for a new trial," and remanded the case to. the district court to hear the evidence on the issues presented. 193 La. 1084, 192 So. 725, 727. The trial judge then heard the evidence and overruled the plea of prescription on the ground that the offense was not made known to the district attorney until April 13, 1939. The defendant again appealed.

.The indictment under which the accused was tried, convicted, and sentenced, was returned by the grand jury on July 24, 1939, and charged that the offense of embezzlement of $400 of the funds of Evangeline Parish was committed by the defendant on March 13, 1937. The indictment negatives prescription by stating that the offense was not made known to any public officer having jurisdiction and power to direct the investigation and prosecution until April 13, 1939.

The pertinent part of Article 8 of the. Code of Criminal Procedure, as re-enacted by Act 21 of the Second Extra Session of 1935, reads:

"No person shall be *prosecuted, tried* or *punished* for any offense, murder, arson, rape, robbery and counterfeiting excepted unless the indictment, presentment or information for the same be found, exhibited or filed, or *unless an affidavit* in misdemeanor cases that may be prosecuted by affidavit, *be filed within one year after the offense shall have been made known to the judge, district attorney or Grand Jury having* jurisdiction; * * * ." (Italics ours.)

In the case of State v. Block, 179 La. 426, 154 So. 46, 47, the Court said:

"* * * The sole way to give effect to the word 'punished,' (Art. 8, C.C.P.) is to permit the defendant, notwithstanding the negation of prescription in the indictment to plead and show, even after conviction, that the offense was prescribed, when the bill was returned." (Parenthesis ours.)

The jurisprudence is clear that where an indictment negatives prescription, the burden rests on the defendant to show that the offense had been made known to a proper officer more than one year before the indictment was returned. State v. Posey, 157 La. 55, 101 So. 869;

State v. Brown, 185 La. 1023, 171 So. 433, and State v. Oliver, supra. Therefore, the issue presented is whether or not the accused has successfully shown that the offense was made known to the district attorney more than a year before the indictment was presented.

The evidence shows clearly that the accused was a member of the police jury of the Parish of Evangeline from the Fifth Ward; that the Louisiana Crusade Oil Company damaged the public road in this ward; that the accused, in his capacity as police juror, had discussed the matter with the oil company's representative and made demand that the company pay the police jury for the damages caused; that he apprised some of his fellow members of the police jury of the claim and the company's willingness to pay the costs of repairing the road; that it was agreed, in writing, that the oil company would pay the sum of $400 to Mr. Oliver for the purpose of having the work done; that a check was issued by the oil company to the order of J. D. Oliver (not to the police jury of the Parish), and a notation was made on the left lower margin of the check that Oliver was the police juror of Chicot Area, Ville Platte, La.; that the check and the written release of the oil company from further liability to the police jury were presented and the question arose as to whether or not the defendant, as a police juror, had authority to bind that body in signing the release and accepting the check and cashing it without the authorization of the police jury by an ordinance or resolution; that in order to settle the matter, these papers were taken by the oil company's representative and the defendant, on his suggestion, to the office of the district attorney, as legal advisor of the police jury, and he informed them that, in accordance with the usual custom and precedent of each member of the police jury being permitted to look after the affairs in his particular ward, the defendant had authority to receive the check and sign the release for the police jury and that the company would thereby be protected; that the defendant being of the opinion that he could proceed with the work, employed Clovis Dardeau, his former co-defendant, to repair the road; that the check was cashed on the endorsement of Oliver, Dardeau and Oliver's wife and that approximately $25 thereof was spent in making the repairs to the road; that neither the $400 nor any part thereof was placed in the Parish Treasury by Oliver or Dardeau; that the public road was never repaired except to a negligible extent; that from March 13, 1937, through June, 1938, some of the members of the police jury and the district attorney knew of these facts and there had been some discussion of the matter, particularly with reference to whether or not the defendant had any right to represent the police jury in receiving the check and proceeds thereof and signing the release; and that in March and April of 1938, there were rumors of irregularity in the handling of this matter and some general complaint that the road had not been repaired.

■ The question before the Court is not whether the district attorney had actual knowledge of the embezzlement of the

funds by the defendant and Dardeau, but whether or not he had notice or such knowledge or information of the transaction as to put him upon inquiry.

In the case of State v. Hayes, 161 La. 963, 109 So. 778, 779, the Court stated:

"Our conclusion is that the plea of prescription was well founded, and should have been sustained, in so far as the plea was based on the fact that the offense had been made known to an officer authorized to direct or institute a criminal prosecution more than a year previous to the filing of the information."

In State v. Perkins, 181 La. 997, 160 So. 789, 791, it was stated:

"The meaning of the word 'knowledge' is to be largely determined by the connection in which it is used. Its extent is not always the same when used in connection with different statutes relating to different subjects. In a legal sense, knowledge may be positive or imputed. While knowledge is to be distinguished from belief, information, and suspicion, the means of knowledge may be equivalent to knowledge. Knowledge may mean that which is gained by information or intelligence as well as what is obtained from personal observation. The term may include that which is imputed and may be used as synonymous with notice of such circumstances as ordinarily, upon investigation, would lead in the exercise of reasonable diligence to a knowledge of the fact. One who intentionally remains ignorant may be chargeable in law with knowledge. And while notice is not actual knowledge, it may be such information as men usually act upon in ordinary human affairs. In this sense, knowledge is such actual notice as would put one upon inquiry. See Corpus Juris, vol. 35, p. 919.

\* \* \*

"To say the least, the information that was in the possession of the district attorney was sufficient to place him on notice that defendant had committed the crime of bigamy, and to suggest that a prompt and full inquiry be had as to the facts. There is no reason to suppose, in the exercise of due diligence, he could not have discovered within the year prescribed by the codal article that, as it subsequently developed, defendant's first wife was living undivorced from defendant at the time he contracted his second marriage. Hence, it is immaterial whether the facts furnished the district attorney be referred to as notice or as knowledge. The effect produced was the same in either case. The notice the district attorney received of defendant's commission of the offense of bigamy was equivalent to the knowledge on his part that defendant had committed the crime.

"The facts of this case bring it clearly within the principle announced by this court in the cases of State v. Hayes, 161 La. 963, 109 So. 778, and State v. Cooley, 176 La. 448, 146 So. 19."

In State v. Young, 194 La. 1061, 195 So. 539, 540, we said:

"Within the meaning of the Code, a crime or offense is made known to an officer 'having jurisdiction' when the facts which come to his knowledge are such as to in-

dicate to him that it is his official duty to act or to see that an investigation of the alleged crime is instituted within his jurisdiction."

In the case of State v. Cooley, 176 La. 448, 146 So. 19, 22, the Court said:

"The prescription, prescribed by article 8, Code Cr.Proc., begins to run from the date knowledge of the crime is made known to the judge, district attorney, or grand jury having jurisdiction, and it is not affected by the nonaction of the official or official body authorized to prosecute, no matter what the official's reason may be for his or their nonaction."

· The general complaints in March and April, 1938, were that Oliver had received the funds; that the money had not been deposited in the parish treasury; and that the road had not been repaired.

█ The record clearly shows that the district attorney handled and saw the check and release of March 13, 1937, and knew the check was not payable to the order of J. David Oliver for his personal benefit but in his capacity as a police juror for the purpose of having the public road repaired; that he had signed the written release of the oil company in behalf of the police jury; that Oliver did not endorse the check to the police jury and that neither the whole amount of the check nor any part of it was deposited with the treasurer of the police jury or to its account; that the road being a public one, it was obvious that it had not been repaired; that the president of the police jury on one occasion travelled over the road in his automobile and knew of its condition and that the district attorney had some short period of time after March 13, 1937, substantially explained to the members of the police jury how the transaction had been handled as far as the acceptance of the check and the signing of the release were concerned. The members of the police jury and the district attorney had from March 13, 1937, until at least twelve months thereafter, to learn what had become of the funds. The slightest and most perfunctory observation or investigation would have revealed the true situation, for the conclusion is inescapable that since the district attorney and the members of the police jury knew that Oliver had the check and apparently cashed it without depositing the funds in the Parish Treasury and the road had not been repaired, that the money had been diverted or misappropriated by him.

It is argued by the state that the members of the police jury and the district attorney were deceived by Oliver and Dardeau, who stated that the oil company's representative had dealt directly with Dardeau in having the road repaired and paying the sum of $400 for that purpose and therefore it was not the business of the police jury or the district attorney to know how this money was used or spent; and that the members of the police jury and the district attorney did not learn that the check had been made payable to Oliver and endorsed by him until the secretary of the police jury, in response to his letter, received a photostatic copy of the check and the letter from the oil company on April

13, 1939, that the company had dealt with Oliver as a member of the police jury from the Fifth Ward and not Dardeau. We have no doubt that due to the lapse of time and the fact that the members of the police jury and the district attorney had confidence in Oliver that they were under the impression and believed that the oil company had dealt directly with Dardeau and not with Oliver, but, of course, the fact remains and the evidence is uncontradicted on that point that the district attorney handled the transaction in the settlement between the oil company and the police jury on March 13, 1937, and saw the check and written release of liability, and shortly thereafter informed the members of the police jury of how the matter had been handled and therefore they had knowledge that the oil company's representative had dealt with and had made the check payable to Oliver and not Dardeau. We believe the district attorney and the members of the police jury who testified that they had no actual knowledge that Oliver and Dardeau had misappropriated and embezzled the $400 or any part thereof until they received the oil company's letter of April 13, 1939, but it is our opinion that the district attorney and the members of the police jury had sufficient knowledge of the facts of the transaction before June of 1938 to have placed them upon inquiry and investigation in order to ascertain what had become of the proceeds of the check and at that time or even before then to have demanded and exacted an accounting of the funds or the prompt prosecution of Oliver for the embezzlement thereof.

The Legislature, as a matter of public policy in this State, has prohibited delayed prosecutions for this type of crime by providing that the indictment or information shall "be filed within one year after the offense shall have been made known to the judge, district attorney or Grand Jury having jurisdiction * * * ." The obvious purpose of this law was to require the prompt filing of criminal prosecutions and to eliminate the fear by persons of the threat of prosecution by public officials charged with that duty, more than one year after the offense had been made known to them. If the officer charged with the duty of instituting the prosecution is permitted to negative prescription by merely stating he did not have actual knowledge of the commission of the offense, such a holding would, in a large measure and for all practical reasons, nullify the effect of this law.

For the reasons assigned, it is ordered, adjudged and decreed that the plea of prescription is well founded and therefore sustained, the verdict of the jury and the sentence of the district court are annulled and set aside and the defendant, J. David Oliver, is discharged.

ODOM, Justice (dissenting).

My dissent in this case is based upon my conclusion, after reading the testimony of all the witnesses called by the defendants and by the district attorney, that no officer authorized by law to institute criminal proceedings had knowledge of the commission of the crime until within one year prior to the date on which the indictment was returned. Nor does the testimony

show that facts came to the knowledge of the district attorney sufficient to put him on guard and to make it his duty to institute an investigation until the month of October, 1938, which was less than 12 months from the date on which the indictment was returned.

The testimony shows, and the district attorney admits, that he had knowledge of the check transaction in the year 1937. By "check transaction" I mean the delivery of the $400 check to the defendant Oliver by a representative of the oil company. But it was not the duty of the district attorney to follow this transaction up and see that Oliver spent the money as contemplated.

The defendant Oliver is not prosecuted for unlawfully receiving the check or its proceeds. The charge made against him is that he embezzled the proceeds, or unlawfully appropriated the same to his own use and benefit. Just when he did that is not made clear by the record. The crime was committed when the proceeds of the check were feloniously appropriated to the use and benefit of the defendants.

It is true, of course, that, when facts relating to the felonious appropriation of the money came to the knowledge of the district attorney, it was his duty to make an investigation. But the record clearly shows, in my opinion, that no rumors or suggestions came to the ears of the district attorney that the money had been feloniously appropriated by the defendants, until the month of October, 1938, and the indictment was filed on July 24, 1939. As we said in State v. Perkins, 181 La. 997, 160 So. 789, 792, "the real situation" was not made

known to the district attorney more than a year prior to the date on which the indictment was filed.

This was the conclusion reached by the trial judge, who in a written opinion reviewed and commented upon the testimony of the witnesses. We quote the following from his written opinion:

"After this check was received by Oliver, nothing was heard of it, or of the disposition made of the $400.00, until the month of October, 1938, some ten (10) months prior to the rendition of the indictment, when rumors reached the ears of certain members of the Police Jury and the District Attorney that all or a major portion of this $400.00 had been misused or embezzled by the defendant Oliver, with the aid and assistance of his wife, Mrs. Martha Oliver, and co-defendant Clovis Dardeau. At that time, October, 1938, the defendants were questioned about this $400.00 check and the manner in which it had been used by the defendants, and defendants, by false statements and accounts to the Police Jury and the District Attorney, led them to believe that said $400.00 had not been received by defendant Oliver, as police juror, or for the account of the Police Jury, but that said $400.00 had been received by Oliver for the account of defendant Clovis Dardeau, who, they represented, had been employed by the Oil Company to repair the damage caused to the road."

The judge, commenting upon the testimony of the defendant Oliver, said:

"The defendant, J. D. Oliver, by his own testimony, admitted that what he and Dar-

deau meant when they alleged in their plea of prescription that the District Attorney 'had knowledge of the offense' more than one year prior to the finding of the indictment, was that the District Attorney had knowledge that he, Oliver had received this $400.00 from Oil Company. This defendant further admitted that he did not mean to say that the District Attorney had knowledge that some of the money was misused or embezzled. At page 14 of the transcript of the testimony, from testimony of J. D. Oliver, the following is quoted:

"'By Mr. Guillory:

"'Q. What do you mean when you said the District Attorney had knowledge, do you mean to say that I had knowledge of the fact that you had received the check, or I had knowledge of the fact that you had stolen some money? A. I mean to say that you *had knowledge of the check* that the oil man had given me for the damages on the road.

"'Q. You don't mean to say that I had knowledge that you had stolen some of that money? A. No.'"

Similar testimony is found throughout the record. Witnesses called by defendants testified on direct examination that the district attorney did have knowledge of the "transaction" more than 12 months before the indictment was found. But on cross-examination they said that what they meant was that he had knowledge of the check transaction—that the district attorney knew that Oliver had received the check and not that he had misappropriated its proceeds.

I respectfully dissent.

## On Rehearing.

## PER CURIAM.

Through a misunderstanding, we treated this case as though Clovis Dardeau, one of the defendants herein, was no longer urging his rights under the appeal. His attorney, on an application for a rehearing, called our attention to the fact that Dardeau had reserved a bill of exception to the ruling of the trial judge and had properly perfected his appeal, which he had not waived or abandoned, and that we had erroneously excluded him from the benefits of our judgment.

An examination of the record discloses that counsel's statement is correct. As Dardeau's position is identical with that of his co-defendant Oliver, he is equally entitled to have the judgment of this Court likewise apply to him.

For the reasons assigned, it is ordered, adjudged and decreed that our original decree be and the same is hereby amended by sustaining the plea of prescription and also annulling the verdict of the jury and the sentence of the district court as to the co-defendant Clovis Dardeau, who is hereby discharged, and, as thus amended, the decree is made the final judgment of this Court, and the application for a rehearing filed by the co-defendant Clovis Dardeau is sustained in that respect.

The State's application for a rehearing is denied.

ODOM, J., dissents from the refusal to grant the State a rehearing.