24 So.2d 819

**STATE v. STANTON.**
No. 37986.

Jan. 7, 1946.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Dewey J. Sanchez, Dist. Atty., and Braxton B. Croom, both of Baton Rouge, for appellant.

Sargent Pitcher, Jr., of Baton Rouge, for appellee.

ROGERS, Justice.

The defendant, Robert A. Stanton, was charged in two counts of an information filed on April 27, 1945, with committing forgery on or about March 12, 1942, and with uttering the forged instrument on the same date. In a third count prescription was negatived on the ground that the defendant, immediately following the commission of the offense, absconded from the State and was a fugitive from justice. The prosecution was instituted under Section 833 of the Revised Statutes, as amended by Act No. 204 of 1918, and as further amended by Act. No. 136 of 1934, § 1, the alleged offense having been committed before the adoption of the Criminal Code.

Prior to the trial, the defendant filed a plea of prescription on the ground that more than three years had elapsed since the alleged commission of the offense. Defendant avers that from December 1942 until October 6, 1944, he was in the Armed Forces of the United States and that therefore he had not lost his residence in Louisiana; that the office of the district attorney was aware of the fact that he was in the Army (should be Navy) for the reason that he so notified the sheriff's office on October 9, 1942, and was advised thereby that no effort would be made to secure his release to answer the offenses set forth in the information. Defendant further alleged that by virtue of being a member of the Armed Forces of the United States he had not lost his residence in Louisiana; that he had not fled to evade prosecution for any offense and therefore was not a fugitive from justice and the offenses charged against him were prescribed. The plea of prescription was tried in limine before the judge. After the introduction of evidence and argument by counsel, the judge, for oral reasons assigned, sustained the plea. The State reserved a bill to the ruling and has appealed therefrom.

Defendant, Robert A. Stanton, was charged with the crime of forgery and uttering by an affidavit dated April 22, 1942, and filed on the same day in the clerk's office of the 19th Judicial District Court for the Parish of East Baton Rouge. The affidavit was executed before one of the judges of the district court by the credit manager of the Charles H. Hebert Mercantile Company of Istrouma in the Parish of East Baton Rouge. The judge of the district court also issued his warrant directing the sheriff or any legal officer to arrest the accused and bring him before the court to answer the complaint set forth in the affidavit.

The evidence taken on the trial of the plea of prescription shows that prior to February 28, 1942, defendant and his wife resided in the City of Baton Rouge where defendant was employed by the firm of Stone & Webster. Defendant and his wife left Baton Rouge on February 28, 1942, and never returned thereto until defendant

was extradited and brought to Louisiana from California, in November, 1944, to answer the charges contained in the affidavit filed against him. The bill of information on which defendant is being prosecuted in this case was not filed until April 27, 1945.

The testimony shows that defendant and his wife left Baton Rouge by automobile to visit the son of defendant's wife by a prior marriage, who was about to enter the military service at Los Angeles. They stopped for a day in Houston, Texas, in order to see defendant's father-in-law and then left for Los Angeles, requiring about four days to make the trip. They remained in Los Angeles four or five days when they returned to Houston. The return trip also required about four days. Defendant remained in Houston about three days when he left for Pittsburg, Pennsylvania, ostensibly to go by way of Dallas, Texas, and Kansas City, Missouri. Defendant arrived in Pittsburg, where he had secured a job with the American Bridge Company, on March 21, 1942. Several months later defendant's wife joined him in Pittsburg where she lived with him until she returned to Houston in the latter part of October, 1942, when defendant expressed his intention of entering the naval service. With the exception of one visit he paid his wife at Houston, defendant remained continuously in Pittsburg from March 21, 1942, until December 17, 1942, when he was ordered to proceed to Davisville, Rhode Island, and to report to the Commanding Officer at Camp Endicott for active duty.

The testimony further shows that defendant was not informed of the charges pending against him in Louisiana until he attempted to enlist in the United States Navy on October 6, 1942, at which time he was given the information by the recruiting officer. It appears that the recruiting officer had received a circular sent out by the office of the Sheriff for the Parish of East Baton Rouge asking for assistance in apprehending the defendant. Similar circulars were sent to the police departments and other authorities and official bodies of a number of cities where it was thought defendant might be found. Upon being informed by the recruiting officer of the United States Navy at Pittsburg of the charges pending against him in Louisiana, defendant immediately employed Mr. George Little, an attorney of Pittsburg, to telephone the Sheriff's Office in the Parish of East Baton Rouge in order to ascertain the particulars. The call was made on October 9, 1942, and Mr. Little talked to Andrew S. Webre, Chief Deputy Sheriff, whose name was signed to the circular. It appears from the testimony of Mr. Webre, which is in the record under an agreed statement as to what he would testify, that defendant claimed he had received the alleged forged check from a man named John Williams to whom the defendant had sold some tires. Mr. Webre informed Mr. Little that if defendant could furnish his office with an affidavit to that effect signed by Williams, the charge against defendant would probably be withdrawn. The evidence on the part of defendant shows that Mr. Little informed

Mr. Webre that defendant was not in custody and was in his office at the time the conversation was being had. The testimony further shows that although defendant was in the Naval Reserve at the time, he was not called for active duty until sometime after the conversation between Mr. Little and Mr. Webre had occurred. Defendant testified that he was willing to come back to Louisiana and face the charges but was not allowed to do so, his commanding officer stating, "if the State of Louisiana wants you, they can come up or put in for you and have the civilian authorities arrest you." He further testified that when the State apparently refused to do anything about the charges prior to his being called into active service he thought the charges were dropped. On cross-examination by the district attorney, the defendant admitted that he at no time communicated with the district attorney, any judge, or the grand jury of the Parish of East Baton Rouge, where the crimes with which he is charged are alleged to have been committed. Defendant explains his failure to do so in these words: "Well, sir, I didn't know anybody to have them call. If your name had been on the circular, I would have called you; if the judge's name had been on the circular, I would have called him. Mr. Webre's name was on it, and that is the man I called."

Defendant served in the United States Navy as a member of a Naval Construction Battalion from December 17, 1942, until October 6, 1944, when he received his honorable discharge at the Naval Base, Port Hueneme, California. After defend-

ant's discharge from the Navy he registered with the draft board at Los Angeles, which was the nearest draft board to where he lived, giving his correct address, and he was told that the Los Angeles Board would communicate with the draft board in the City of Baton Rouge. Defendant was living with his wife in Los Angeles when he was arrested in November, 1944, at the request of the Louisiana authorities. The uncontradicted evidence in the case shows that defendant never at any time attempted to change his name or to conceal his identity and there is nothing in the record to show that any effort was made by the authorities of the Parish of East Baton Rouge to apprehend defendant in Pittsburg or anywhere else after the conversation took place between Mr. Little, the Pittsburg attorney, and Mr. Webre, the Chief Deputy Sheriff of the Parish of East Baton Rouge. Defendant served two years in the United States Navy as a Seabee and received his honorable discharge in October 1944, and it is admitted that the Louisiana authorities never made any attempt during this time to obtain defendant's release from the Navy in order that he might be brought to Louisiana to answer the charges against him.

Article 8 of the Code of Criminal Procedure, as amended, provides that:

"No person shall be prosecuted, tried or punished for any offense * * * unless the indictment, information, or affidavit for the same be found or filed within one year after the offense shall have been made known to the judge, district attorney or grand jury having jurisdiction; * * *.

"Nothing in this article shall apply or extend to an accused person who has absconded, or who is a fugitive from justice * * *."

The alleged offenses for which defendant is being prosecuted under the bill of information were committed on or about March 12, 1942, and the information was not filed until April 27, 1945. As more than one year elapsed between the alleged commission of the offenses and the filing of the information charging the commission thereof, it is clear that under the provisions of Article 8 of the Code of Criminal Procedure, as amended, the prosecution of defendant is barred unless the defendant was a fugitive from justice, or the offenses with which he is charged were not made known to a proper officer or official body until within one year before the information was filed.

The negation of prescription under the bill of information is not based on the fact that knowledge of the commission of the offenses was not made known to the judge, district attorney or grand jury having jurisdiction within one year of the filing of the bill. It is based on the allegation that the defendant "absconded from the State of Louisiana and was a fugitive from justice."

The defendant under his plea of prescription contends that he was not a fugitive from justice and that his prosecution is barred because the bill of information was not filed within one year after the offense had been made known to the proper authorities.

To make a person a fugitive from justice it must first appear that he was within the state when the crime charged is alleged to have been committed. On this phase of the case, the defendant testified that on March 12, 1942, he was on his way back from California to Texas and that he was not in Louisiana on March 15, the day on which the check was cashed at the store of the Hebert Mercantile Company. Defendant admitted, however, that he cashed a check similar in tenor and amount to the check involved in this case at the Hebert Mercantile Company, but stated that the transaction took place on February 3, 1942, and not on March 15, 1942. Mr. Charles H. Hebert, the proprietor of the Hebert Mercantile Company, identified defendant as the person who cashed the alleged forged and uttered check with him and testified in detail as to the circumstances under which the transaction took place. Mr. Louis H. Strickland, Chief Field Deputy Sheriff of the Parish of East Baton Rouge, who was appointed as the agent for the State of Louisiana in connection with the extradition of defendant from California, testified that after he had taken defendant into custody for the purpose of returning him to Baton Rouge, defendant told him that he obtained the check from a man named Williams for some tires and that he was in Baton Rouge on March 15, 1942 when he cashed the check at "Charlie Hebert's Store." It apparently is not disputed that the check purportedly signed by John F. Williams and made payable to the order of defendant bears defendant's endorsement. Moreover, it was wholly possible that defendant, after leav-

ing Houston for Pittsburg, stopped over in Baton Rouge on or about March 15, 1942, cashed the check involved herein, went on to Kansas City and then to Pittsburg. In view of these circumstances, it is our opinion that the prosecution has established the fact of defendant's actual presence in Louisiana at the time of the commission of the alleged offenses.

■ Since defendant was in the State at the time the alleged offenses with which he is charged were committed, but was not in the State at the time the bill of information setting forth the offenses was filed, the question to be determined is whether he was a fugitive from justice within the meaning of the proviso contained in the last paragraph of Article 8 of the Code of Criminal Procedure. In considering the question it is well to keep in mind the distinction between the term "fugitive from justice" as used in extradition cases and as used in cases involving the limitation of prosecutions for a criminal offense. This distinction is pointed out by the Supreme Court of Nebraska in these words: "The term 'fugitive from justice,' as used in statutes pertaining to extradition, is not synonymous in meaning with the term 'fleeing from justice,' as used in the statute of limitations. Ordinarily, in statutes relating to extradition the term 'fugitive from justice' has reference to one who has committed an offense in one state or jurisdiction and is afterwards found in another. Generally, the motive that induced his going from the state or jurisdiction, where the offense was committed, to another is immaterial. The

mere fact that he has gone from the jurisdiction, where the offense was committed, into another is held sufficient to make him a 'fugitive from justice,' within the meaning of the extradition statute. The term 'fleeing from justice,' as used in the statute of limitations, has a somewhat different significance. It means to leave one's usual place of abode, or to leave the jurisdiction, where the offense has been committed, with intent to avoid detection or prosecution for some public offense." Colling v. State, 116 Neb. 308, 217 N.W. 87, 88. And in State v. Berryhill, 188 La. 549, 177 So. 663, 664, this Court held that the allegation in the bill of information that the accused "fled from justice" was the same as alleging that he was a "fugitive from justice." In the Berryhill case, the trial judge charged the jury that if the accused was hiding from the criminal authorities of this State, or some other State, he was a "fugitive from justice." This Court held that "absconding" or "fleeing from justice," which under the statute deprives the accused of the benefit of limitation therein contained, means absconding or fleeing from the arresting or prosecuting officers of this State and not from similar officers of another State. The Court approved that portion of the judge's charge which is quoted in the decision as follows: "In the present case the State has alleged in the bill that the accused 'fled from justice', which is the same thing as saying that he was a 'fugitive from justice'. A person who commits a crime and withdraws himself from such jurisdiction without waiting to abide the consequences of such act, ordinarily, must be regarded as a 'fugitive

from justice', of the state whose laws he has infringed. * * * However, mere absence from the State is not sufficient. Such absence must be for the purpose of avoiding prosecution, and not for some legitimate purpose. In other words, to put the matter in common parlance, the accused must be 'hiding' from the criminal authorities of this State * * *. The prosecuting authorities must make reasonable efforts to find the perpetrator of the crime and bring him to trial, and be unsuccessful in such effort."

This Court has held that the running of the statute is not suspended where the accused goes into an adjoining parish for the purpose of establishing a permanent abode there in good faith and makes no attempt to conceal himself. State v. Hayes, 162 La. 917, 111 So. 327. And the Supreme Court of Nebraska in Colling v. State, supra, held that the running of the statute is not suspended where, although the accused goes into another state, there is an entire absence of evidence to show concealment or intent to avoid prosecution.

■ The facts, as disclosed by the record, are not sufficient to bring defendant within the proviso contained in the last paragraph of Article 8 of the Code of Criminal Procedure. There is nothing in the record to show that the defendant departed from the State in order to avoid any criminal prosecution. On the contrary, the record discloses that defendant left the State for the legitimate purpose of visiting his step-son in California and of later going to Pittsburg in order to work for the American Bridge Company, for which company he had previously worked at Morgan City in this State. When defendant left Louisiana, he did not change his name nor attempt to conceal his identity nor the place to which he had gone. When he was apprised in Pittsburg of the charges pending against him in this State he immediately employed an attorney to contact the sheriff's office in Louisiana which held the warrant for his arrest to ascertain the particulars. If the prosecution had been instituted against him at that time he could have been extradited and returned to Louisiana for trial. But, notwithstanding the whereabouts of defendant was well known to the Sheriff of the Parish of East Baton Rouge and his deputies from November 9, 1942, no effort was made to have defendant arrested and returned to this State until the institution of extradition proceedings in November 1944.

Since it does not appear that the defendant was a fugitive from justice within the meaning of Article 8 of the Code of Criminal Procedure, the remaining question to be determined arises on the allegations of defendant's plea of prescription and is whether the prosecution is barred because the bill of information was not filed within one year after the alleged offenses were made known to the proper officer or official body having jurisdiction.

Article 8 of the Code of Criminal Procedure, as amended, provides that no person shall be prosecuted, tried or punished for any offense (with certain exceptions) unless the indictment, information, or affidavit be found or filed within one year atfer the offense shall have been made

known to the judge, district attorney or grand jury having jurisdiction. Forgery and uttering are not among the offenses excepted from the statutory limitation. In State v. Sullivan, 159 La. 589, 105 So. 631, 632, this Court in construing a similar statute, namely, Act No. 73 of 1898, stated that: "The statute not only protects the accused against conviction for any such offense (meaning one prescribed), but relieves him even of being tried therefor."

 In State v. Block, 179 La. 426, 154 So. 46, this Court held that the only way to give effect to the word "punished" as used in Article 8 of the Code of Criminal Procedure is to permit the defendant, notwithstanding the negation of prescription in the indictment or information, to plead and show that the offense was prescribed, when the bill was returned or filed. That is what the defendant has done in this case.

Considerable argument is contained in the briefs of counsel for the State and counsel for the defendant on the question of whether the knowledge of the sheriff and his deputies of defendant's alleged offenses was imputable to the district attorney and, independently of that fact, whether such knowledge was of itself sufficient to interrupt the running of the prescriptive period established by the Code article. The district attorney and his deputies took the witness stand and denied that they had any knowledge of the alleged offenses until they were informed that defendant had been arrested in Los Angeles on October 28, 1944.

: There are a number of decisions by this Court holding that the knowledge of

a sheriff or his deputies of the commission of a criminal offense is sufficient to start the running of the statutory prescription. But those decisions were rendered prior to 1928, when the Code of Criminal Procedure was adopted, and are not applicable to this case. Under the provisions of Article 8 of the Code, as amended by Act No. 147 of 1942, the only public authorities or official body whose knowledge of the commission of a criminal offense bars prosecution for the offense if the indictment or information be not found or filed within one year are the judge, district attorney or the grand jury having jurisdiction. Since the knowledge of the sheriff and his deputies of the commission by defendant of the alleged offenses was not sufficient to interrupt the running of the statutory prescription and since the district attorney and his deputies denied that they were aware of the charges pending against defendant under the affidavit filed by the credit manager of the Hebert Mercantile Company in the office of the clerk of the district court on April 22, 1942, defendant's plea of prescription can be sustained only if it be shown that the knowledge of the crime was made known to the judge or grand jury having jurisdiction.

A copy of the affidavit made by H. F. Pretorious, Credit Manager of the Hebert Mercantile Company, charging defendant with the commission of the alleged offenses of forgery and uttering, is among the documents filed in the court as part of the record. An examination of the affidavit shows that it was made before one of the judges of the 19th Judicial District

Court for the Parish of East Baton Rouge on April 22, 1942, and was filed on the same day in the office of the Clerk of Court. The record further shows that the warrant for the arrest of defendant on the complaint of Mr. Pretorious was also signed on April 22, 1942, by the judge before whom the complaint was made and on the same day was delivered to the sheriff's office for execution.

 Since one of the judges having jurisdiction of the alleged offense executed the affidavit charging the offenses, and also issued the warrant for the arrest of the alleged offender, it is clear that the defendant has brought his case within one of the limitations set forth in the Code article.

In State v. Oliver, 196 La. 659, 199 So. 793, this Court held that in order to invoke the statutory prescription actual knowledge of the commission of a prescriptible offense by a judge, district attorney, or grand jury is not necessary, but only that such officers have notice or such knowledge or information of the facts of a transaction as to put the officer on inquiry.

In State v. Young, 194 La. 1061, 195 So. 539, 540, we stated: "Within the meaning of the Code, a crime or offense is made known to an officer 'having jurisdiction' when the facts which come to his knowledge are such as to indicate to him that it is his official duty to act or to see that an investigation of the alleged crime is instituted within his jurisdiction." And in the case of State v. Cooley, 176 La. 448, 146 So. 19, 22, we stated: "The prescrip-

tion, prescribed by article 8, Code Cr.Proc., begins to run from the date knowledge of the crime is made known to the judge, district attorney, or grand jury having jurisdiction, and it is not affected by the nonaction of the official or official body authorized to prosecute, no matter what the official's reason may be for his or their nonaction."

The foregoing statements in State v. Young and State v. Cooley were quoted with approval in State v. Oliver.

Since it does not appear that the defendant was a fugitive from justice as alleged by the State, and since it does appear that the alleged offenses were made known to a proper officer more than one year before the bill of information was filed as set up by defendant, the prosecution must fall within the bar of the Code article and the judge was correct in so holding.

For the reasons assigned, the judgment appealed from is affirmed.