Section 2 of Act No. 6 of 1928 (Ex. Sess.) reads as follows:

"The aforesaid tax of four cents per gallon shall be collectible from all persons, firms, corporations or associations of persons, engaged as dealers in the handling, sale or distribution of such products within the State of Louisiana, the method of collection to be as prescribed in Section 4 of this Act. The term 'dealer' as used in this Act is defined to mean any person, firm, corporation or association of persons, who produces, refines, manufactures, blends or compounds gasoline or motor fuel for sale to the jobber or consumer, or to the persons, firms, corporations, or associations of persons who, in turn, sell to the jobber or consumer. * * * "

■ It is axiomatic that the allegations of a petition are accepted as being true when exceptions of no right or cause of action are considered. Wolff v. Hibernia Bank & Trust Co., 161 La. 348, 108 So. 667; Town of Minden v. Stewart et al., 142 La. 467, 77 So. 118; Kird v. N. O. & N. W. R. Co., 105 La. 226, 29 So. 729; Logan v. Walker, 152 La. 880, 94 So. 430.

The state alleges in paragraph 1 of its petition a definite sum to be due it by defendants. In paragraph 2, as amended, it is stated that defendants from June 4, 1932, and up to and including September 29, 1932, imported quantities of distillate and kerosene, "and at their place of business in Ouachita Parish, Louisiana, did there distill, refine and/or blend same with casing head gas into 40,329 gallons of gasoline, which was by them in turn sold as gasoline to other dealers and to the general public." In paragraph 3, the state claims the tax is due under the statute.

■ Under the provisions of the statute, gasoline is taxable, regardless of its flash point. It is only with reference to the definition of motor fuel that the flash point is designated. The petition expressly sets forth that gasoline was distilled and sold to dealers and the general public. It was therefore unnecessary to allege that the gasoline had a flash point below 110 degrees.

■ Apparently, the district judge and counsel for the defendants are better informed than we are on the question of chemistry presented, i. e., whether or not compounding or blending distillate and kerosene with casing head gas will produce gasoline. We do not think that this information is so generally known that it is a subject matter of which the courts can take judicial cognizance.

■ It is our opinion that the petitions set forth a right and a cause of action. Davis v. Arkansas Southern Railway Co., 117 La. 320, 41 So. 587; Woodruff v. Producers' Oil Co., 142 La. 368, 76 So. 803; Jacobs Candy Co. v. Dennis Sheen Transfer Co., [See Louisiana and Southern Digest] Johnson v. Legeai, 147 La. 92, 84 So. 505.

For the reasons assigned, the judgment of the lower court is annulled, the exceptions are overruled, and the case is remanded to the trial court for further proceedings, according to law. Appellees to pay the costs of this appeal; all other costs to await the final disposition of the litigation.

181 La. 907

## STATE v. PERKINS.
### No. 33279.

Supreme Court of Louisiana.
April 1, 1935.

Gaston L. Porterie, Atty. Gen., and Eugene Stanley, Dist. Atty., and A. B. Granzin, Jr., and J. Bernard Cocke, Asst. Dist. Attys., all of New Orleans, for the State.

Maurice R. Woulfe and G. Wray Gill, both of New Orleans, for appellee.

ROGERS, Justice.

The defendant was charged in a bill of information with the crime of bigamy. The first count of the bill alleged that the defendant married one Gertie Ann Hebert on October 15, 1928; he being, at that time, the lawful husband, not divorced, of one Lorena Lee. The second count negatived prescription.

Defendant filed a plea that, contrary to the averment of the second count of the bill his prosecution was prescribed. As the basis for the plea, defendant alleged that the act charged had been brought to the attention of the district attorney more than one year prior to the date on which the information was filed.

The plea of prescription was heard contradictorily and sustained by the trial judge, who discharged the defendant. The state then appealed.

The evidence taken on the trial of the plea of prescription is in the record. Briefly stated, it shows that in April or May, 1933, Mrs. Gertie Ann Hebert Perkins, the wife of the defendant, was sent to the office of the district attorney by some person connected with the juvenile court, where she had made a charge of nonsupport against her husband. That when Mrs. Perkins called at the office of the district attorney, she was referred to one of the assistant district attorneys, to whom she made her complaint. She stated that she wanted to charge her husband with bigamy. Mrs. Perkins informed the assistant district attorney her husband had told her that prior to their marriage he had been married to a woman named Lorena Lee, from whom he had never been divorced. Mrs. Perkins, however, did not know this woman nor where she could be found. The assistant district attorney then sent Mrs. Perkins away to get further information. Later, she came back to his office and gave him a document she had obtained from the city hall showing that her husband had secured a license to marry Lorena Lee. At that time, Mrs. Perkins told the assistant district attorney that while she did not know where Lorena Lee lived, she thought she lived somewhere in Mississippi, either on the gulf coast or in the center of the state. The assistant district attorney then sent for the defendant, who admitted his previous marriage to Lorena Lee and that he had not divorced her, although he did not know whether she had divorced him or whether she was living or dead.

Subsequently, to wit, on September 13, 1934, the defendant was charged with bigamy and the count negativing prescription was included in the bill.

Article 8 of the Code of Criminal Procedure provides that: "No person shall be prosecuted, tried or punished for any offense, * * * unless the indictment, * * * be filed within one year after the offense shall have been made known to the judge, district attorney," etc.

The state concedes that if the testimony adduced on the trial of the plea of prescription constitutes in law "a making known to the district attorney" of the commission by defendant of the crime of bigamy, the plea was properly sustained by the trial judge, since more than one year elapsed between April or May, 1933, when Mrs. Gertie Ann Hebert Perkins made her complaint, and September 13, 1934, when the information was filed. But the state argues since no proof

was furnished the assistant district attorney that in April or May, 1933, defendant's first marriage had not been dissolved either by law or by death, it cannot be successfully contended that an offense had been committed by defendant, and, consequently, for the purpose of the discussion, no offense could have been made known to the district attorney.

■ An "offense" in its legal signification means the transgression of a law for which punishment may be inflicted. The word may be and is frequently used interchangeably with the word "crime." It is in this sense, as disclosed by the text, that it is used in article 8 of the Code of Criminal Procedure.

The record leaves no room for doubt that the defendant was in April or May, 1933, guilty of the crime of bigamy. As shown by the bill of information filed in this case, defendant's first wife, Lorena Lee, was living at that time and no divorce had been granted to either of the spouses.

■ In these circumstances, we do not think it can be said that defendant's offense was not made known to the district attorney at the time defendant's second wife made her complaint. The fact, as argued by the state, the district attorney at that time was not in a position to prove that defendant's first marriage had not been dissolved by death or divorce, and hence he had no knowledge of the commission of the crime, does not take the case out of the rule prescribed by the codal article.

■ The meaning of the word "knowledge" is to be largely determined by the connection in which it is used. Its extent is not always the same when used in connection with different statutes relating to different subjects. In a legal sense, knowledge may be positive or imputed. While knowledge is to be distinguished from belief, information, and suspicion, the means of knowledge may be equivalent to knowledge. Knowledge may mean that which is gained by information or intelligence as well as what is obtained from personal observation. The term may include that which is imputed and may be used as synonymous with notice of such circumstances as ordinarily, upon investigation, would lead in the exercise of reasonable diligence to a knowledge of the fact. One who intentionally remains ignorant may be chargeable in law with knowledge. And while notice is not actual knowledge, it may be such information as men usually act upon in ordinary human affairs. In this sense, knowledge is such actual notice as would put one upon inquiry. See Corpus Juris, vol. 35, p. 919.

The district attorney was in possession of the information that defendant was not divorced from his first wife and that defendant had no knowledge of her having divorced him. This information constituted at least a prima facie showing that the spouses had not been divorced. And we do not think the district attorney was justified in assuming that defendant's first wife might have died during the period elapsing between defendant's first and second marriages. In the absence of proof to the contrary, the presumption was that she was still living. Moreover, he was told by defendant's second wife that, while she had no positive knowledge of the fact, she understood that defendant's first wife was living somewhere in the state of Mississippi.

To say the least, the information that was in the possession of the district attorney was sufficient to place him on notice that defendant had committed the crime of bigamy, and to suggest that a prompt and full inquiry be had as to the facts. There is no reason to suppose, in the exercise of due diligence, he could not have discovered within the year prescribed by the codal article that, as it subsequently developed, defendant's first wife was living undivorced from defendant at the time he contracted his second marriage. Hence, it is immaterial whether the facts furnished the district attorney be referred to as notice or as knowledge. The effect produced was the same in either case. The notice the district attorney received of defendant's commission of the offense of bigamy was equivalent to the knowledge on his part that defendant had committed the crime.

The facts of this case bring it clearly within the principle announced by this court in the cases of State v. Hayes, 161 La. 963, 109 So. 778, and State v. Cooley, 176 La. 448, 146 So. 19.

In the Hayes Case the defendant was charged with assault by willfully shooting at another. He pleaded the prescription of one year in bar of the prosecution. His plea was overruled and he was convicted of the offense charged. On appeal this court annulled the conviction, holding that the plea of prescription was well founded and would require the discharge of the defendant but for the allegation in the information that the defendant had been a fugitive from justice continuously from the date of the offense to within the year prior to the filing of the charge.

The defendant had offered to rebut the allegation on the trial of the case, but the trial judge would not hear the evidence, and the case was remanded for that purpose. On the second trial of the case, the trial judge found that the defendant had not absconded or fled from justice, and he held that the prosecution was therefore barred by prescription. On appeal, this court affirmed the judgment. See State v. Hayes, 162 La. 917, 111 So. 327. In the first Hayes Case, this court in stating that the plea of prescription was well founded, held that under a plea of prescription, on the ground that an officer authorized to institute the prosecution knew of the alleged assault more than a year previous to the filing of the information, the defendant was not required to show that the officer knew the details or that the facts involved criminal liability and would sustain the charge.

In the Cooley Case, it was held that the prescription prescribed by article 8 of the Code of Criminal Procedure begins to run from the date knowledge of the crime is made known to the judge, district attorney, or grand jury having jurisdiction, and it is not affected by the nonaction of the official, or official body authorized to prosecute, no matter what the official's reason may be for his or their nonaction.

But the state respectfully suggests that the Hayes and Cooley Cases were not correctly decided and that they are in conflict with the decision in State v. Touchet, 46 La. Ann. 827, 15 So. 390, which the state contends was correctly decided.

We do not find the suggested conflict in the cases and think that all of them were correctly decided. It is true there are some expressions in the Touchet Case which might lead to the conclusion the decision in that case is inconsistent with the decisions in the later cases of Hayes and Cooley. But an examination of the opinion in the Touchet Case shows it was an exceptional case and was so considered by the court. The court said, as appears in 46 La. Ann. on page 829, 15 So. on page 391: "We think, under the facts of this *special case*, that prescription only began to run when the district attorney became advised of the real situation." (Writer's italics.) The facts of the case, as disclosed by the opinion, were that one Sevenne Conners, and not Touchet, was originally charged with the commission of the crime. Conners was twice tried. On the first trial the jury disagreed. After the second trial he was discharged, although the record does not show under what circumstances his discharge oc-

curred. On the day Conners was discharged, the information was filed against Touchet. The district attorney testified that it was only on the second trial of Conners that the evidence pointed to Touchet as the guilty party; that the evidence taken on the preliminary examination, which resulted in the charge against Conners, and the evidence taken on the first trial, indicated that the charge against Conners was well founded. That immediately on ascertaining the new state of the evidence he filed the information against Touchet. That the change in evidence resulted from the bringing forward of several witnesses who had not previously testified.

The justice of the peace before whom the affidavit against Conners was made testified that on the preliminary examination which was conducted before him, Conners' daughter testified that Touchet had taken the coat, and that after the preliminary examination was concluded and Conners had been committed for trial, Conners offered to make an affidavit against Touchet, although Conners had not taken the stand on the preliminary examination and sworn to the facts against Touchet. This court, in commenting upon the testimony of the justice of the peace said: "It is evident from the testimony of the justice of the peace that he did not believe either the testimony of the daughter or the statement of Conners, and that, so far from considering that Touchet was the person to be prosecuted, he was of the opinion that the persons who were accusing him were attempting to improperly shield the person really chargeable,—Conners." And the court further said: "His official action shows that he believed Conners to be the guilty party, and, as we have said, the district attorney says the evidence on the preliminary examination justified that belief. We do not think that, under the circumstances stated, it could be held that the justice had such knowledge of Touchet's having committed the crime as would in law serve as the starting point for prescription." From all of which it will be seen that as only one of the parties could be guilty, the justice of the peace, was justified, from the evidence submitted to him, in determining that Conners was chargeable with the crime. It was only when subsequent developments showed that the actual facts were different from what they had every appearance of being when official action was called for, that the situation changed. And it was from that time only that prescription began to run.

In the Hayes and Cooley Cases, the only parties chargeable with the commission of

the offenses were the defendants themselves. The same condition of things exists in the instant case. At the time defendant's second wife complained to the district attorney that her husband was a bigamist, the only person who could be chargeable with the crime was the defendant himself. Neither in the Hayes or Cooley Cases nor in the instant case were any facts subsequently developed that were different from what they were when official action was called for.

For the reasons assigned, the judgment appealed from is affirmed.

ODOM, J., dissents.