MARVIN, Judge.
Tomlinson appeals his conviction of transferring with intent to defraud, a forged writing, known by him to have been forged (LRS 14:72, in part) and his sentence to five years at hard labor. LSA-Const. Art. 1, § 20.
Defendant’s first three assignments essentially question the legal sufficiency of the bill of information and of the evidence upon which the conviction is based. We affirm.
On the morning of March 12, 1982, an employee of a savings and loan bank in Ouachita Parish, Ms. Banks, was asked by the defendant, who was sitting in a truck in the bank parking lot before the bank opened, whether she was a bank employee and whether she would make a deposit for him. She agreed and watched defendant write what she said was a deposit slip, which he gave her with two checks and some money. The deposit slip listed $231 in cash, a personal check of Donald Brown payable to defendant’s order for $56.56, and a check of the Louisiana Office of Employment Security payable to the order of GARY L. ELLIS for $164. The $56.56 check payable to defendant was endorsed by defendant. The $164 check payable to Gary L. Ellis was endorsed Gary Brooks Ellis. The bank credited defendant’s account with the deposit as the deposit slip directed. A copy of the deposit slip and of the GARY BROOKS ELLIS endorsement on the reverse of the $164 check is reproduced here:
[[Image here]]
*382 [[Image here]]
Ms. Jackson, another employee of the bank, who had seen defendant and Ms. Banks in the parking lot, received the deposit from Ms. Banks. Before crediting the deposit to defendant’s account, Ms. Jackson wrote “for deposit” on the reverse of the $164 check and placed defendant’s account number thereon because the bank required this information on the check.
Donald Brown testified that he wrote the $56.56 check to defendant to pay defendant for mechanical work defendant did on Brown’s automobile. Gary L. Ellis testified that he did not know defendant, had never dealt with defendant, did not know how defendant came into possession of the $164 check, that he did not receive his state unemployment check for the week of February 27, and that the endorsement GARY BROOKS ELLIS on the check was not his signature or a name which he had ever used. Police witnesses testified that the driver’s license number written beneath the endorsement did not relate to any GARY *383 BROOKS ELLIS but belonged to a white 51-year-old female in Lake Charles, Louisiana, a Ms. Chasson.
Exemplars of defendant’s handwriting and signature, the deposit slip and the $164 check were given to the Northwest Louisiana Criminalistics Laboratory for analysis. The crime lab was also given exemplars from Gary L. Ellis. The handwriting expert reported that Gary L. Ellis did not endorse the $164 check, that there were some similarities between the defendant’s exemplars and the writing on the deposit slip and the endorsement on the check, that neither the writer of the deposit slip nor the writer of the endorsement GARY BROOKS ELLIS could be identified from the handwriting, and that the endorsement was “disguised” writing.
Defendant did not testify. He argues that identification of him by the two bank employees is suspect or suggested and does not prove that he was the man who gave the checks and deposit slip to Ms. Banks. We find this argument without merit. Both of the bank employees picked defendant’s picture from a photographic line-up when the police conducted an investigation and both identified him in the courtroom as the man in the parking lot. This is direct evidence that defendant was the person who wrote something and who gave the deposit slip, the checks and the money to Ms. Banks and asked her to make the deposit for him when he learned she was a bank employee. Defendant effectively “transferred" these items to Ms. Banks, an employee of the savings and loan bank, in the parking lot just as if he had waited until the bank opened and had conducted business over the counter with her.
The evidentiary issue in these circumstances' is not whether the state proved that defendant transferred a forged writing. The forgery and the transfer were clearly proved by direct evidence and beyond a reasonable doubt. The issue is whether the check was known by defendant to be a forged writing, and if so, whether defendant transferred it with the intent to defraud. LRS 14:72.
Defendant argues that the only evidence from which it could be concluded that he knew the endorsement on the check was forged was the fact of his unexplained possession of the check (assuming its transfer by defendant, which he does not concede, but which we find was proved). From this premise, defendant asserts that his unexplained possession of the check cannot be the basis of proof of knowledge because it would reflect upon his constitutional right to remain silent and to be presumed innocent. The fact of possession of a forged writing, defendant says, is unlike the possession of goods recently stolen, and does not give rise to a presumption of knowledge or a presumption that the possessor is the forger. Compare LRS 15:432. See also State v. Spears, 363 So.2d 479 (La.1978); State v. Bergeron, 371 So.2d 1309 (La.1979); State v. Fournier, 395 So.2d 749 (La.1981); State v. Kaufman, 278 So.2d 86 (La.1973); State v. Rock, 162 La. 299, 110 So. 482 (1926); State v. Goiner, 410 So.2d 1085 (La.1982).
While we do not agree with defendant’s premise or with his ultimate conclusion, we agree that the state bears the burden of proving every element of the crime charged beyond a reasonable doubt and that the mere possession of a forged writing does not prove beyond a reasonable doubt that the possessor knows that the writing is forged. LRS 15:271. State v. Goiner, supra.
In Goiner, Helen Goiner presented a prescription for a CDS to a pharmacist that was written by a doctor to Helen Johnson. Suspecting, and later confirming, that the doctor’s signature on the prescription was a forgery, the pharmacist alerted the police. After Ms. Goiner returned and picked up the prescribed CDS, she was arrested by the police and was charged with knowingly obtaining a CDS by fraud and deceit and with possession of CDS. The trial judge acquitted Ms. Goiner of the charge of obtaining by fraud and deceit and convicted her of possession of CDS. The su *384 preme court reversed that conviction on appeal, saying that the acquittal of the charge of obtaining by fraud and deceit eliminated any evidence of the guilty knowledge element of the possession charge.
In the crime charged in Goiner, it was necessary that the state prove guilty knowledge in two respects, defendant’s knowledge that she possessed a CDS and defendant’s knowledge that the CDS had been obtained by a forged prescription. LRS 40:969 C, 410 So.2d at 1088. When Ms. Goiner was acquitted of the charge of obtaining by fraud and deceit (knowledge of the forged writing), there was, in fact, no evidence upon which to base proof of Ms. Goiner’s possession of CDS with knowledge that it had been obtained by an invalid or forged prescription.
Knowledge, like intent, must often be inferred from the totality of the circumstances of a transaction when it is an element of the crime charged. It need not be proven as a tangible fact. See LRS 15:445.
“Just as we have seen that the word ‘intent’ has not been limited to its dictionary definition, it is also true that the word ‘knowledge’ has likewise sometimes been given a broader definition. Cases have held that one has knowledge of a given fact when he has the means for obtaining such knowledge, when he has notice of facts which would put one on inquiry as to the existence of that fact, when he has information sufficient to generate a reasonable belief as to that fact, or when the circumstances are such that a reasonable man would believe that such a fact existed. Sometimes belief in the existence of an attendant circumstance is deemed sufficient, sometimes it is not. While these decisions, at least in some instances, may have resulted in the setting of desirable limits on the mental state required for various crimes, they have led to considerable confusion because the word ‘knowledge’ has been taken to mean many different things — all the way down to mere negligence in not knowing.” LaFave and Scott, Criminal Law, at p. 198. Footnotes omitted. See also State v. Bagneris, 237 La. 21, 110 So.2d 123, 126 (1959).
The test of knowledge, in the few places where it is explained in the Criminal Code, is not a subjective test (what the offender subjectively knew), but is a completely objective test (what the offender is taken to know that any reasonable person so situated would have known) ... because of the difficulty of proof by the prosecution. See Reporter’s Comment, LSA-R.S. 14:69. LRS 14:3.
While defendant did not testify, Donald Brown’s testimony established that defendant is engaged in business as an auto mechanic. Defendant’s possession of the Donald Brown check for $56.56 was proved by direct evidence. Defendant’s transfer to the bank of that check, along with the $164 check, the money, and the deposit slip, was proved by direct evidence. Unlike the prescription in Goiner that contained the forged signature of the doctor and nothing on its face to alert Ms. Goiner or a trier of fact that the signature was forged, the $164 check, involved here, bore an endorsement, later proved to be forged in fact, that was not the same name as the payee of the check. This discrepancy is notice to a possessor of the check which would put a reasonable mind, a businessman, or a trier of fact, on inquiry about the discrepancy. See LaFave, supra. Whether a reasonable mind would be put on inquiry is the objective standard which prevails in the Criminal Code.
“The term [knowledge] may include that which is imputed and may be used as synonymous with notice of such circumstances as ordinarily, upon investigation, would lead in the exercise of reasonable diligence to a knowledge of the fact. One who intentionally remains ignorant may be chargeable in law with knowledge. And while notice is not actual knowledge, it may be such information as men usually act upon in ordinary human affairs. In this sense, knowledge is such actual notice as would put one on inquiry.” State v. Bagneris, supra, at p. *385 126, quoting State v. Perkins, 181 La. 997, 160 So. 789, 791 (1935)
Contrary to what defendant argues, there is ample evidence from which it may be objectively determined that defendant Tomlinson knew that the endorsement on the $164 check was a forged writing when he transferred it to the bank employee with his deposit slip. The endorsed name on the reverse of the check is obviously not the name of the payee on the front of the check. The writing on Tomlinson’s deposit slip, which is reproduced above, and writing exemplars of Tomlinson have “some similarities.” Tomlinson was identified as the person who wrote the deposit slip or something similar in the presence of Ms. Banks and who gave her the deposit slips and the checks for deposit, one of which had been given to Tomlinson by Brown and which was endorsed by Tomlinson. Concluding from the totality of this evidence that Tomlinson knowingly transferred a forged writing with intent to defraud does not do violence to the right of Tomlinson to remain silent and to be presumed innocent because the element of knowledge is objectively determined and the inference is not made on the basis of mere possession of a forged writing and defendant’s failure to explain his possession.
The element of intent to defraud in LRS 14:72 is an element of general intent.
“A general intent to defraud should be an essential element of forgery. However, it is unnecessary that an injury result from the actual consummation of the fraud, since the intent to defraud is sufficient. State v. McCranie, 192 La. 163, 187 So. 278 (1939). It is also unnecessary to prove that the offender intended to defraud any particular one, for if he intended to defraud any person the crime is complete. Hence it suffices if the instrument does or may prejudice the rights of another. State v. LaBorde, 120 La. 136, 45 So. 38 (1907).
“The intent should be able to be inferred from the circumstances, as in the case of a forgery of a check the ‘jury ought to infer an intent to defraud the person who would have to pay the instrument if it were genuine * * * ’. State v. Dennett, 19 La.Ann. 395 (1867).” LSA-R.S. 14:72; Reporter’s Comment, in part.
Defendant’s conviction is based in part on direct evidence, the transfer, the forged writing, and on circumstantial evidence, the inference of the elements of knowledge and intent. LRS 15:438. State v. Chism, 436 So.2d 464 (La.1983); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also State v. Knox, 450 So.2d 376 (La.App.2d Cir.1984). From the totality of the evidence, we find that it is reasonable to conclude beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that Tomlin-son knowingly transferred a forged writing with intent to defraud. The evidence is legally sufficient to support the conviction.
Defendant contends that the bill of information should have been quashed because the endorsement Gary Brooks Ellis does not, of itself, constitute a forged writing. Defendant says the endorsement is not a forgery either if the person who endorsed the check was in fact a person by the name of Gary Brooks Ellis, or if the endorsement is a fictitious name. While the cases cited by defendant, on their respective limited circumstances, lend support to defendant’s argument, the law is not as rigid in all respects or in the instant circumstances as defendant suggests.
“Thus, signing one’s own name and representing that one has authority to give the writing in question is not forgery, since the writing itself is just what it purports to be. See State v. Lebo, 166 La. 784, 117 So. 829 (1928). But signing another’s name and making the writing appear to be that of the other is clearly forgery. Signing a fictitious name should also produce a “false” writing and amount to forgery, where the fictitious name is represented as that of a person other than the offender. State v. Hahn, 38 La.Ann. 169 (1886). The writing would not be false if a fictitious name is used by the offender as an alias, however. State v. Melson, 161 La. 423, *386 108 So. 794 (1926). The latter might amount to ‘false pretenses’ (theft), but not forgery. See State v. Wilson, 168 La. 932, 123 So. 624 (1929). Signing the offender’s own name, with the intent of having the writing appear to be that of another with an identical name, should also be forgery. Clark and Marshall, Law of Crimes (4th ed. 1940) 515, § 395. Any falsification of a writing, besides false signatures, done with intent to defraud (such as misdating a document) would satisfy this section. Any fraudulent alteration would clearly be included.” LSA-R.S. 14:72, Reporter’s Comment, in part.
The bill of information charges the crime defined in the second paragraph of LRS 14:72:
“Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.”
The overruling of the motion to quash was not error. CCrP Art. 532.
We also do not find the five year sentence excessive. Defendant was exposed to a 10-year sentence and a $5,000 fine. Defendant had a prior criminal history of manipulating checks and bank accounts. He was on five years probation for middle grade theft when this crime occurred. We adopt the articulated reasons given by the trial judge for the sentence which we find is not grossly out of proportion to the severity of the offense.
Defendant’s conviction and sentence are AFFIRMED.