DREW, J.
hThe state appeals the grant of a motion to quash. We affirm.
FACTS
James Hayward Lester is the principal of a Shreveport contracting firm named ReGenesis Construction Company. An investigation into alleged fraud by the company in public construction projects led to the filing of a bill of information on November 18, 2009, charging Lester with:
• one count of home improvement fraud, La. R.S. 14:202.1; and
• one count of filing false public records, La. R.S. 14:133.
On the public records charge, the bill alleged:
From February 28, 2003 through August 31, 2009, he did file or deposit for record in a public office or with a public official, a document containing a false statement or false representation of material fact, to wit: “Application for Original Contractor’s License.”
On February 14, 2012, the state filed an amended bill, dismissing the charge of home improvement fraud, but reurging the false public records , charge, alleging:
James Hayward Lester committed the offense of [filing a false public record] in that he did file or deposit for record in a public office or with a public official, a document containing a false statement or false representation of material fact, to wit: Application for Original Contractor’s License.
The “Application for Original Contractor’s License” referred to in both of these bills was signed under oath on February 26, 2003, and filed two days later, under the name of ReGenesis Construction Co. as an “individual” application.[1] In separate sections, James H. Lester and Juanita |¡>H. Lester were both listed as “partners” and as members of a limited liability company.
*1183 The defendant was the qualifying party under La. R.S. 37:2156.1(D).
On this application, Question 7 inquires:
Have you or principals in your firm been convicted of a felony or a misdemeanor other than violation of traffic laws? If yes, explain on separate sheet.
The word “No” is handwritten in the blank next to this question.
The Board ultimately issued a license to ReGenesis Construction. ■
The defendant annually submitted applications for license renewal from 2003 through 2007. None of these five renewal applications inquired as to convictions of principals; they required only certification that “all statements, answers and representations in this application are true and accurate” and advised that “any false information submitted on my behalf and verified by my signature is cause to have license denied, revoked or suspended!.]”
Defendant’s answer to Question 7 was indeed inaccurate.
In 1994, under a previous name,[2] the defendant pled nolo contendere to one count of possession of less than two ounces of marijuana in Denton County, Texas. The Texas court sentenced him to a 60 day jail sentence, suspended on condition of one year of probation. The defendant did not successfully complete probation but was released from supervision in March of 1998.
| ⅞A July 15, 2009, affidavit in support of an arrest warrant states that Louisiana State Police obtained a copy of defendant’s 2003 application for a contractor’s license after contacting the Board on March 19, 2009.
The defendant prepared an explanatory letter[3] to the Board, dated October 13, 2009, which discussed his inaccurate answer to Question 7, explaining that:
(1) he did not note the contrast in wording between this application form and another licensure application which only asked about felony convictions; and
(2) that he pled “no contest” to the marijuana charge under the mistaken belief that the offense would be automatically removed from his record after two years. He admitted later understanding that ex-pungement was not automatic.
On April 9, 2014, the defendant filed a motion to quash the amended bill because the prosecution was untimely under La. C. Cr. P. art. 572. At a hearing on June 19, 2014, the defendant argued that the prosecution was untimely since his contractor’s licensure application was filed in February 2003, more than six years before the bill of information was filed.
The prosecutor argued that the state had four years to prosecute the defendant, beginning with the date the offense was discovered by the state.
To this assertion, defense counsel responded:
Your Honor, in this situation, the State actually knew. Even if that’s the argument, the State knew of the incorrect application.
*1184 An individual with the licensing board of the State of Louisiana, there was a report filed with them, and they rejected going' forward with suspending his license or revoking his license because he still has his license. That was done back then when the application went through.
[ 4After an unrecorded bench conference, the court explained:
After a bench conference and some clarification of the facts, it is my understanding that (the) application (was) filed in February of 2003.
The application was kicked out because, allegedly, the defendant checked an incorrect box is his contention concerning a prior conviction. The State kicked it out at that time because, apparently, they did know or find the conviction, but did not take any action. It would have been incumbent upon the State licensing board to notify the District Attorney if the State at the time felt that a crime had been committed. So the Court does find that the State had knowledge in February of 2008. As I said at the bench conference, the State is the State.
The court granted the motion to quash and dismissed the prosecution.
DISCUSSION
On appeal, the state make the arguments that:
• the trial court erred in granting the • motion “based upon an alleged notice to the Louisiana State Board of Licensing for Contractors was sufficient notice to the law enforcement and/or district attorney with jurisdictional authority over criminal acts,” citing State v. Bagneris, 237 La. 21, 110 So.2d 123 (1959), and State v. Strong, 39 La. Ann. 1081, 3 So. 266 (1887);
• the Board may revoke a contractor’s license for failure to continue to fulfill any requirement for original li-censure, La. R.S. 37:2158A(8), making this a fiduciary obligation upon the licensee under La. C. Cr. P. art. 573; and
• ’ the defendant has the burden of proving that the appropriate authorities have knowledge of the offense sufficient to commence the time limitation for the institution of prosecution and the Board is not such an authority.
Typically, appellate courts apply an abuse of discretion standard in reviewing a district court’s ruling on a motion to quash. State v. Stanley, 49,683 (La.App.2d Cir. 1/14/15), 161 So.3d 1034, citing State v. Love, 2000-3347 (La.5/23/03), 847 So.2d 1198.
| sThe defendant’s motion to quash was based on La. C. Cr. P. art. 532(7), which allows a motion when the “time limitation for the institution of prosecution or for the commencement of trial has expired.”
La. R.S. 14:133 provides, in part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
[[Image here]]
(3) Any document containing a false statement or false representation of a material fact.
[[Image here]]
C. (1) Whoever commits the crime of filing false public records shall be im *1185 prisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.
This charged crime is thus a felony offense not necessarily punishable by imprisonment at hard labor. La. C. Cr. P. art. 572 provides, in part:
A. Except as provided in Articles 571 and 571.1, no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed:
[[Image here]]
(2)Four years, for a felony not necessarily punishable by imprisonment at hard labor.
La. C. Cr. P. art. 577 provides:
The issue that a prosecution was not timely instituted may be raised at any time, but only once, and shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial. The state shall not be required to allege facts showing that the time limitation has not expired, but when the issue is raised, the state has the burden of proving the facts necessary to show that the prosecution was timely instituted.
Under La. C. Cr. P. art. 572, the state has four years “after the offense has been committed” to institute prosecution for a felony not necessarily [ fipunishable by hard labor, and under La. C. Cr. P. 577, the state has the burden of proving the facts showing that the prosecution was timely instituted.
La. C. Cr. P. arts. 573 and 573.1[4] provide exceptions to the running of time limitations under certain circumstances. La. C. Cr. P. art. 573 provides:
The time limitations established by Article 572 shall not commence to run as to the following offenses until the relationship or status involved has ceased to exist when:
(1) The offense charged is based on the misappropriation of any money or thing of value by one who, by virtue of his office, employment, or fiduciary relationship, has been entrusted therewith or has control thereof.
(2) The offense charged is extortion or false accounting committed by a public officer or employee in his official capacity.
(3) The offense charged is public bribery.
(4) The offense charged is aggravated battery (R.S. 14:34) and the victim is under seventeen years of age.
The 1966 comments to La. C. Cr. P. art. 572 explain:
(a) This article carries forward the 1960 law, which makes the time begin to run at the commission of the offense, instead of at the time the offense is made known. Louisiana experienced long difficulty with the “made known” test, as explained in the Preliminary Statement.
Thus the legislature made the deliberate choice to abandon the former “made *1186 known” triggering of the time limits for the Commencement of prosecution.
17Under the present scheme, with limited exceptions, the time limitation for the institution of prosecution commences “after the offense has been committed.” As the court explained in State v. Stetson, 317 So.2d 172 (La.1975), at pp. 174-175:
The statute represents a legislative assessment of relative interests of the State and defendant in administering and receiving justice; it is enacted for the repose of society and the protection of those who may have lost their means of defense because of the passage of the prescribed time. The statute furnishes the desirable ingredient of predictability by specifying a limit beyond which there is an irrefutable presumption that a defendant’s right to a fair trial would be prejudiced. Its purpose is to limit exposure to criminal prosecution to a fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanction. By this limitation individuals are protected from having to defend themselves against charges when the basic facts may have become obscured by the passage of time. Danger of official punishment because of acts in the far-distant past are minimized. Law enforcement officials are encouraged by such a limitation to promptly investigate suspected criminal activity.
La. C. Cr. P. art. 573 has no application in this case, even by analogy, as this offense is not based on the misappropriation of a thing of value, extortion, false accounting, public bribery or aggravated battery.
Under the modern scheme of time limitations for the institution of prosecution, the delay for the institution of prosecution for filing a false public record commenced after the offense was committed. The rules and cases governing the “made known” standard in effect before 1960 are inapplicable to the modern scheme. Proof of when the district attorney had imputable knowledge of the.alleged offense is irrelevant to our inquiry.
The public record in question was Lester’s 2003 application for a contractor’s license, filed February 28, 2003. The original bill of |sinformation charging him with this offense was filed on 'November 18, 2009, more than four years after the offense was committed. Thus, on its face, the institution of prosecution was untimely under La. C. Cr. P. art. 572.
In its reply brief, the state makes the case that the defendant was under a continuing duty to correct the misinformation, in that “the original falsification of a public record is continued by appellee’s renewal applications wherein he does not correct the original falsification[.]”
The state did not present this argument to the trial court and, as the nonprevailing party, is prohibited from making the argument now.
Even if we examine the merits of this argument, we cannot find actionable assertions in the defendant’s five annual renewal applications, as there are no references therein as to the accuracy of the original application. In addition, each bill of information refers only to the defendant’s “Application for Original Contractor’s License” as the triggering document for the prosecution.
As illustrated by State v. Stanley, supra, some criminal offenses may be continuing offenses that terminate only upon the filing of a criminal charge or the *1187 voluntary termination of the illegal activity.
As noted above, La. R.S. 14:133 provides, in part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required, by law, regulation, or rule, with knowledge of its falsity, of any of the following:
[[Image here]]
(3) Any document containing a false statement or false representation of a material fact.
IflEmphasis added. The statute uses the word “maintaining” as one of the punishable types of conduct.
La. R.S. 14:3 provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
We find that the word “maintaining” is directed to the conduct of those charged with the legal requirement of record retention. Compare State v. Advanced Recycling, 2002-1889 (La.4/14/04), 870 So.2d 984, a false public records case discussing the duty of a tire recycler to maintain, in accordance with law and regulation, records of its processing of tires.
There is no Louisiana contracting law or regulation requiring that the applicant must “maintain” his original application for a license. See Title 46, Part XXIX, Section 1 of the Louisiana Administrative Code.[5] Any duty in that regard lies with the Board.
In summary, this defendant cannot be criminally prosecuted for failing to “maintain” the record. Any consideration of lenity certainly preponderates that the actions of the defendant did not amount to a continuing offense.
| inParties appeal from judgments, and the trial court was correct in granting the motion to quash. The rectitude of that action is not predicated upon when the prosecutor had arguably imputable knowledge of the alleged crime. For purposes of computing the timeliness of the initiation of a prosecution for filing false public records, the triggering event is when the crime occurred.
DECREE
AFFIRMED.

. The application also had choices for "partnership,'' "corporation,” and "limited liability company,” among others.

. In March of 2000, two years after the expiration of his probationary term, the defendant obtained a court order in Tarrant County, Texas, changing his name from James Earl Hayward to his present name of James Hayward lister.

. The letter was submitted by the defendant as a response to the state’s motion for discovery and is described as a "proposed” letter on the cover page.

. La. C. Cr. P. Art. 573.1 deals with extended prosecutorial time limitations for charging defendants accused of exploiting persons with infirmities, delaying the tolling of time limitations until discovery by a competent victim or third person. La. C. Cr. P. Art 572 contains no such discovery or knowledge rule.

. This section, titled "Contractor’s Record Keeping,” requires contractors to maintain "adequate records at all times to show compliance with the licensure requirements of all subcontracts and subcontractors.” This rule concerns proof of licensure and does not relate to the original application for licensure of either the contractor or any subcontractor.